ANDREA T. MARTINEZ, Acting United States Attorney (9313)
MELINA SHIRALDI, Assistant United States Attorney (13110)
JEFFREY E. NELSON, Assistant United States Attorney (2386)
Attorneys for the United States of America
111 South Main St., Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Melina.Shiraldi@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| RUBI GARCIA, individually and on behalf of her minor child, A.H.G.,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES of AMERICA,<br><br>Defendant. | **UNITED STATES' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:19-cv-00416-CW-DBP<br><br>District Judge Clark Waddoups<br>Magistrate Judge Dustin B. Pead |

### INTRODUCTION

The United States has moved for summary judgment on the ground that Plaintiff Rubi Garcia did not present her administrative claim to the Department of Health and Human Services within the two-year statute of limitations applicable to the Federal Tort Claims Act ("FTCA"). *See* Mot. for Summ. J. (ECF 20). In her opposition memorandum, Plaintiff argues that the statute should be equitably tolled and her claim should be considered timely because (1) Utah law tolls the state's statute of limitations for injuries to a child until the child reaches the age of 18, (2) Ms. Garcia was unaware that the physician who delivered her child was deemed to be a

federal employee, and (3) the continuous-treatment doctrine applies to Ms. Garcia's claim. *See* Pl.'s Opp. Mem. (ECF 25). The undisputed facts do not support these arguments.

## ARGUMENT

I. **The tolling provision for minors' claims under Utah's statute of limitations cannot support equitable tolling of Ms. Garcia's claim because the timeliness of her claim is governed by the FTCA's two-year statute of limitations, not Utah state law.**

Ms. Garcia correctly states that the United States' liability under the FTCA is governed by the law of the state where the tortious activity occurred. *See* Pl.'s Opp. Mem. at 6 (citing 28 U.S.C. § 1346(b)). This principle does not apply, however, to the timeliness of Ms. Garcia's claim. "While a tort claim under the FTCA substantively follows state law liability, its statute of limitations provisions are governed by federal law, not state law." *Morales-Melecio v. United States (Dep't of Health & Hum. Servs.)*, 890 F.3d 361, 365 n.9 (1st Cir. 2018). Thus, Utah's statute of limitations—which tolls the statute for injuries to a minor child until the age of 18—does not apply to Ms. Garcia's claim under the FTCA. *Robbins v. United States*, 624 F.2d 971, 972 (10th Cir. 1980) ("[A] claimant's minority does not toll the running of the statute of limitations under the Federal Tort Claims Act."). "The federal courts have consistently rejected requests to create tolling exceptions for minors, reasoning that in the absence of an express legislative directive to the contrary, parents and guardians are assumed to be adequate surrogates." *United States v. Alvarez*, 710 F.3d 565, 568 n.10 (5th Cir. 2013).

Ms. Garcia nonetheless argues that Utah's tolling statute is relevant to her request for equitable tolling. First, Ms. Garcia contends that she believed that Utah's statute of limitations would not begin to run until her daughter was 18 years of age. Pl.'s Opp. Mem. at 7–8 (citing

2

UTAH CODE ANN. § 78B-2-108). But Ms. Garcia's belief is insufficient to support equitable tolling. The Supreme Court has cautioned that equitable tolling is to be applied "sparingly," such as where a plaintiff files a timely but defective pleading or where the plaintiff "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990). By contrast, equitable tolling will not salvage a case filed belatedly due to "a garden variety claim of excusable neglect." *Id.* Thus, for example, the Tenth Circuit has rejected equitable tolling where the plaintiffs had "essentially ask[ed] the court to toll the statute of limitations in this case due to their misunderstanding of the law." *Barnes v. United States*, 776 F.3d 1134, 1150 (10th Cir. 2015). The plaintiffs' explanation that they "had every reason to believe there was no statute of limitation issue . . . amount[ed] to no more than a contention of excusable neglect, and that is not good enough." *Id.* at 1150–51.

Ms. Garcia also argues that equitable tolling is appropriate because "Utah has evidenced a significant interest in protecting its minors" through Utah's tolling statute. Pl.'s Opp. Mem. at 9 (citing *Albright v. Keystone Rural Health Ctr.*, 320 F. Supp. 2d 286 (M.D. Pa. 2004)). In *Albright*, the district court concluded that equitable tolling was appropriate in part because Pennsylvania's tolling statute for minors "evidenced an interest in safeguarding the affairs of its minor litigants." *Id.* at 290–91 (citation omitted). As discussed above, however, state limitations provisions are irrelevant to FTCA actions.

Moreover, it is inaccurate to suggest, as the *Albright* court does, that the FTCA and its legislative history provide no insight into Congress's intent with respect to tolling of minors' claims. *Id.* at 289. The statute itself is instructive. The FTCA's two-year statute of limitations, found in subsection (b) of 28 U.S.C. § 2401, has no tolling provision. But the six-year limitation

3

in subsection (a) of the same statute—which applies to non-FTCA civil actions against the United States—*does* contain a tolling provision for disabled persons. The contrast between the two subsections demonstrates that when Congress intends to include tolling in a statute, it does so explicitly. And when Congress intends to permit tolling for minors' claims specifically, it incorporates an express tolling provision. *See, e.g.,* 18 U.S.C. § 2255(b)(2) (tolling the statute of limitations for civil actions arising from crimes against minors until 10 years after the age of 18). The absence of a tolling provision in § 2401(b) supports the conclusion that Congress did not intend that minors' FTCA claims be subject to tolling.

The legislative history of the FTCA corroborates this conclusion. Prior to the enactment of the FTCA, a number of tort-claim bills were introduced in Congress that would have tolled claims on behalf of minors. *See* Ugo Colella & Adam Bain, *Revisiting Equitable Tolling and the Federal Tort Claims Act: Putting the Legislative History in Proper Perspective*, 31 SETON HALL L. REV. 174, 220–22 (2000). But when it was enacted in 1946, the FTCA had no tolling provision. And Congress has subsequently considered incorporating a tolling provision for minors in the FTCA's statute of limitations. *See Booth v. United States,* 914 F.3d 1199, 1205 (9th Cir. 2019). "But these proposed amendments have not become law. Had Congress wanted to include minority tolling in the FTCA's statute of limitations, it could have done so." *Id.* Thus, the premise for the *Albright* decision—that equitable tolling for a minor's claim is permissible because Congress has not demonstrated a contrary intent—is belied by the FTCA's legislative history and by the absence of an explicit tolling provision in the FTCA's statute of limitations.

4

**II.     Equitable tolling cannot be applied to Ms. Garcia's claim because she knew or should have known that Dr. Horwood was affiliated with the Community Health Centers and was deemed to be a federal employee for purposes of medical-malpractice claims under the FTCA.**

Ms. Garcia asserts that she and her counsel believed Dr. Horwood was employed by the University of Utah Hospital when they submitted a Notice of Intent to Commence Action to the University Hospital in July 2017. *See* Pl.'s Opp. Mem. at 7. Ms. Garcia correctly notes that Dr. Horwood was not involved in her prenatal care during her 2015 pregnancy. However, Ms. Garcia had met with Dr. Horwood in 2011, when she was pregnant with her previous child. On December 21, 2011, Dr. Horwood met with Ms. Garcia at the CHC's Oquirrh View Clinic to discuss the plans for her upcoming labor and delivery. *See* Def.'s Ex. D (Horwood dep.) (ECF 21) at 30:3-32:11. Because Ms. Garcia had delivered her first child by C-section, the CHC's practice was to have a physician meet with her to discuss the risks and benefits of proceeding with a vaginal delivery instead of another C-section. *Id.* After Dr. Horwood discussed the risks and benefits with Ms. Garcia, she decided to proceed with a vaginal delivery and signed a consent form for a "VBAC" (vaginal birth after cesarean). *Id.*; *see also* VBAC Consult and Consent to VBAC (Def.'s Ex. R hereto).

Ms. Garcia's prior discussion with Dr. Horwood at a CHC clinic should have alerted her that Dr. Horwood was not employed by the University Hospital when he arrived to deliver her next child in 2015. But even if Ms. Garcia did not recall her previous meeting with Dr. Horwood, there was ample publicly-available information to inform her of his federal status. On February 15, 2016—about six months after A.H.G.'s birth—Ms. Garcia contacted legal counsel and signed a form authorizing her attorneys to obtain records from the 72nd Street Clinic, where she

5

had received her prenatal care. *See* Def.'s Ex. L (ECF 21). Those records show that the 72nd Street Clinic is part of "CHC Community Health Centers, Inc." *See* Def.'s Ex. B (ECF 21) at 1. The CHC maintains a website with information regarding its clinics. *See* Declaration of Dexter Pearce (Def.'s Ex. S hereto), ¶¶ 4–5.[1] The CHC also maintained this website in 2015 and 2016. *Id.*, ¶ 6.[2] The website links to all of the CHC clinics, including the 72nd Street Clinic where Ms. Garcia had received her prenatal care and the Oquirrh View Clinic where Ms. Garcia had met with Dr. Horwood in 2011. *Id.*, ¶ 5. The Oquirrh View web page in turn links to pictures and information about the clinic's practitioners, including Dr. Horwood. *Id.* & Decl. Ex. 2.

> The following notice appears at the bottom of each of the web pages:
>
> Community Health Centers, Inc. is funded in part through a grant from the U.S. Department of Health & Human Services and generous community support. This health center is a Health Center Program grantee under 42 U.S.C. 254b, and a deemed Public Health Service employee under 42 U.S.C. 233(g)–(n).

The notice directs the reader to 42 U.S.C. § 233(g)–(n), which explains that an employee of a qualified health center is "deemed to be an employee of the Public Health Service." 42 U.S.C. § 233(g)(1)(A). The statute further provides that the exclusive remedy against a deemed employee is through an action under the FTCA. *Id.* (cross-referencing § 233(a)).

With a minimum of research, Ms. Garcia would have learned (or been reminded) that Dr. Horwood was employed by CHC, not the University Hospital; that CHC and Dr. Horwood were deemed to be federal employees; and that the exclusive remedy for alleged medical malpractice was through an action under the FTCA. These facts distinguish this case from the cases Ms.

---

[1] Available at www.chc-ut.org (last viewed October 28, 2021).

[2] Available at https://web.archive.org/web/20160214061403/http:/www.chc-ut.org/ (last viewed October 28, 2021).

Garcia relies on. In *Santos ex rel. Beato v. United States*, 559 F.3d 189 (3d Cir. 2009), the Third Circuit held that the FTCA's statute of limitations was subject to tolling because the plaintiff could not reasonably have been expected to discover that the doctor who delivered her child was deemed to be a federal employee. *Id.* at 203–04. In *Santos*, however, the Court emphasized that Ms. Santos had "diligently and vigorously pursued her claim." *Id.* at 198. Ms. Santos had retained legal counsel, who "performed a public records search on York Health [pediatric clinic], corresponded with York Health, obtained Santos's medical records, visited the clinic, and reviewed pertinent records onsite." *Id.* at 191. By contrast, Ms. Garcia has presented no evidence that she took any steps to determine who employed Dr. Horwood, other than hiring legal counsel. As the *Santos* Court emphasized, "a plaintiff will not receive the benefit of equitable tolling unless she exercised due diligence in pursuing and preserving her claim." *Id.* at 197; *see also Mason v. Dep't of Justice*, 39 F. App'x 205, 207 (6th Cir. 2002) (unpublished) ("[F]or purposes of determining whether equitable tolling applies, the actions of plaintiffs' attorneys are attributable to their clients").

The district court in *Albright v. Keystone Rural Health Center*, discussed above, applied equitable tolling based primarily on its view that it was important to uphold Pennsylvania's interest in protecting injured children, as evidenced by Pennsylvania's tolling statute. The *Albright* court also relied on "the fact that it was difficult if not impossible to ascertain Defendants' federal status." 320 F. Supp. 2d at 291. But unlike the present case, the *Albright* plaintiffs and their counsel had "conducted a diligent and thorough search into Defendants' identities, including researching the proper name and location of Defendants through their public corporate records." *Id.* at 287.

7

Ms. Garcia could have learned of Dr. Horwood's federal status if she had made even a modest effort to look for it. Because she did not diligently pursue that information, equitable tolling cannot salvage her untimely claim.

Nor does Ms. Garcia's filing of a timely administrative claim with the Utah Department of Professional Licensing ("DOPL") justify equitable tolling. *See* Pl.'s Opp. Mem. at 7. When the Supreme Court discussed the types of events that might support equitable tolling, it gave the example of "[the] filing [of] a defective pleading during the statutory period." *Irwin*, 498 U.S. at 96. An administrative claim, however, is not a "pleading." *See* Fed. R. Civ. P. 7(a). Moreover, when Congress passed the Westfall Act to address circumstances where a claimant mistakenly sued a federal employee rather than the United States, it provided relief only if "the underlying civil action" was filed within the FTCA's limitations period. 28 U.S.C. § 2679(d)(5). Ms. Garcia's DOPL notice was not a civil action. *See Raplee v. United States*, 842 F.3d 328, 332–33 (4th Cir. 2016) (an "action" as used in the FTCA's statute of limitations refers to a judicial proceeding, and "a plaintiff cannot satisfy the FTCA's limitations period by filing an action with a state agency that lacks jurisdiction over such an action.").

Furthermore, the DOPL notice Ms. Garcia filed under Utah state law does not suffice to meet the FTCA's requirement that a claimant present an administrative claim prior to filing suit. 28 U.S.C. § 2675(a). That notice did not even list Dr. Horwood or the CHC as a respondent, and it was not served on them. *See* Pl.'s exhibits (ECF 29) at 3–5. Ms. Garcia did not amend that notice to name Dr. Horwood and the CHC until October 13, 2017, after the two-year statute had run. *See* Def.'s Ex. O (ECF 21). Moreover, the FTCA's prelitigation process is different from state-law administrative procedures and serves a different purpose. *Van Dyke v. United States,*

8

457 F. App'x 721, 726 (10th Cir. 2012) (unpublished). Thus, even if Ms. Garcia's DOPL notice had been timely, it could not supplant the FTCA's administrative-claim process.

**III.    The continuous-treatment doctrine cannot toll the statute of limitations for Ms. Garcia's claim because her daughter was not under the continuous care of the physician who allegedly caused her daughter's injury.**

The continuous-treatment doctrine is grounded in the principle that a prospective medical-malpractice claimant should not be compelled to assert a claim against her health-care provider if doing so would interfere with the physician-patient relationship and potentially jeopardize treatment targeted at correcting the injury. *McCullough v. United States*, 607 F.3d 1355, 1362 (11th Cir. 2010). The courts of appeals that have accepted the continuous-treatment doctrine have adopted different approaches. The more expansive application of the doctrine tolls the statute of limitations as long as the allegedly negligent provider continues to be involved in the treatment of the claimant for the injury. *Id.* The more restrictive application cuts off the tolling when the claimant learns what acts caused her injury. *Id.*

Although the Tenth Circuit has alluded to these formulations of the continuous-treatment doctrine, it has not formally adopted the doctrine. *See Stephenson ex rel. Stephenson v. United States*, 147 F. Supp. 2d 1106, 1110–11 (D.N.M. 2001). Even if the doctrine is available in the Tenth Circuit, however, Ms. Garcia's claim is not eligible for tolling. The more restrictive version of the doctrine does not apply because Ms. Garcia knew about the actions that she alleges caused A.H.G.'s injury. Shortly after A.H.G. was born, Ms. Garcia's husband told her that he believed A.H.G.'s injury occurred when Dr. Horwood pulled on her shoulder during the delivery. *See* Mot for Summ. J. at 4–5, ¶ 14. Because Ms. Garcia was aware of the acts that

allegedly caused A.H.G.'s injury, the more restrictive application of the continuous-treatment doctrine does not apply.

Even under the more generous version of the doctrine, the circumstances of A.H.G.'s birth and subsequent treatment do not meet the criteria for continuous-treatment tolling. Dr. Horwood delivered A.H.G., and Ms. Garcia alleges that he did so negligently. *See* Pl.'s Compl. (ECF 2) at 5–6, ¶¶ 26–30. Dr. Horwood's involvement in A.H.G.'s care ended, however, when Ms. Garcia took A.H.G. home from the hospital two days after she was born. As shown in the University Hospital's "Summary of Care" dated August 20, 2015, Dr. Horwood was the attending provider only from August 18 to August 20, 2015. *See* Pl.'s exhibits at 70–71. The provider listed for "follow-up contact information" is Christian Hyer, a physician assistant at the 72nd Street Clinic. *Id.* And, in fact, PA Hyer was one of A.H.G.'s providers at the clinic thereafter, while Dr. Horwood was not. *See, e.g.*, Pl.'s exhibits at 77–88.

Ms. Garcia notes that Dr. Horwood is listed in occupational-therapy records as A.H.G.'s primary-care physician and referring provider. *See* Pl.'s Opp. Mem. at 4, ¶¶ 11, 19. This was carried over on each therapy record beginning with A.H.G.'s first treatment record, presumably because Dr. Horwood was listed as Ms. Garcia's physician after A.H.G.'s delivery. *See* Def.'s Ex. G (ECF 21) at 1. But Dr. Horwood did not continue to treat A.H.G. *See, e.g.*, Pl.'s exhibits at 64–65, 75–76 (A.H.G. was seen in follow-up care by Dr. Betty Liu, not Dr. Horwood). Dr. Horwood was also not the CHC's referring provider. *See* CHC telephone note dated August 20, 2015 (Pl.'s exhibits at 60) (occupational-therapy referral was requested by Dr. J. Moreland, not Dr. Horwood).

Nor have other CHC personnel been involved in treating A.H.G. for her brachial-plexus injury. The only references to A.H.G.'s treatment in the CHC records are in the records of A.H.G.'s periodic well-child visits, in the which practitioners examining A.H.G. recorded the fact that she was undergoing therapy for her shoulder injury and had undergone surgery on her shoulder. *See, e.g.,* Pl.'s exhibits at 76 (note by Dr. Liu), 78, 86 (notes by PA Hyer). But those practitioners were neither providing nor directing the surgery or therapy treatments.

Finally, to the extent the continuous-treatment doctrine is intended to avoid disruption of the physician-patient relationship, that purpose no longer applied in February 2016 when Ms. Garcia contacted legal counsel to assist her with her claim regarding the injury to A.H.G. There was no reason to employ tolling to protect Ms. Garcia from having to make a decision to pursue a claim when she had already decided to do so.

## CONCLUSION

For the foregoing reasons, the United States requests that the court dismiss Ms. Garcia's Complaint with prejudice.

Dated this 29th day of October, 2021.

> ANDREA T. MARTINEZ
> Acting United States Attorney
>
> */s/ Melina Shiraldi*
> MELINA SHIRALDI
> Assistant United States Attorney